The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Thank you. Good morning. First call 4-23-0144, People of the State of Illinois Appellee v. David Stephens Appellant. Would counsel for the appellant please state your name for the record. Anthony J. Santello. Thank you. And for the appellee? Matthew Goldman. Thank you. Mr. Santello, you may proceed. Good morning, your honors and opposing counsel and may it please the court. My name is Anthony J. Santello and I represent David Stephens in this appeal. We raised two issues, the sufficiency of the evidence and an irregular procedure in the selection of alternate where the only evidence of Mr. Stephens' culpability in this offense was the wholly contradictory testimony to witnesses, which was also contradicted by physical and objective evidence. The state failed to prove Mr. Stephens guilty beyond a reasonable doubt. To clarify, the versions of events that were described by the witnesses, Giovanna Tolan and Anne-Charlotte Cook, contradicted each other on almost every major point in describing the shooting. On whether there was... Good morning. Tim, I know I'm interrupting right at the beginning, but you said something that called to mind a question really. When you said they were inconsistent on every major point, the points they were inconsistent on were collateral points, were they not? How would you say that where somebody was standing, whether they were in a scuffle or not, is anything but collateral to who shot the gun and killed Manning? Well, Your Honor, I think the answer lies in part in that I'm not saying that the witnesses were inconsistent. I'm saying they were contradictory and that there were questions that were asked of, for example, Giovanna Tolan, did you see a fight between David Stephens and Billy Manning? And she might have looked away. It's that these questions were asked and they described wholly different versions of events. And as to how that affects the determination of the identity of the shooter and their identification of Mr. Stephens, it goes to undermine the entirety of their testimony. And courts have found that even where an identification was made, if the testimony cannot be accepted for any part of its truth, then even that identification cannot be trusted. And that's the situation we have here. It's not a common situation. It's not a situation in every case, but here where you do have those contradictory points, which are, I would dispute and I disagree, Your Honor, that those are collateral. Those are major points. Question of, for example, explain please, why are they major points as to, for example, where somebody was standing? Well, there was a question in this case as to how many shooters there actually were. And the state put on evidence through its own witness that there were two shooters, two guns in this case. And the trial prosecutor even said that had Mr. Manning lived, there might be a question as to who shot him. One of the big contradictions here was that Antron Cook said there were four shots. Gervonta Tolan said there were six shots, but there were eight shell casings found. So there is a really major dispute as to how this incident actually occurred and what the truth was of the incident. These witnesses were at odds and the actual truth of what happened was not stated. And the physical and objective evidence does not corroborate either version of events. Well, the objective evidence, excuse me, the objective evidence here from the autopsy is that Manning was shot four times in the back. And that is consistent with, I believe, Tolan's testimony, is it not? I believe you're referring to Antron Cook's testimony, Your Honor. I'm sorry. Right. But again, I would actually dispute that. If you look at Mr. Cook's interview with Detective Donato, he is asked to describe the shooting. He actually uses a hand gesture, if I may. If you can see my hands, he says the gun was about this close to the victim's back. And he says the shooting was all at once. The bullets are all one after the other. If you look at the autopsy report and all four entrance wounds, again, that would seem on its face to autopsy report. Again, all four of those entrance wounds, they're in basically the four corners of Mr. Manning's back. I'm not quite so sure that that actually aligns with how Mr. Cook described this incident. And at the same time, there was a bullet found in the red Buick by where Gervonta Tolan said Billy Manning stood when the shooting began. So there's actually evidence that Tolan said it occurred and through the objective and physical evidence. And that is coupled with the fact that Mr. Cook showed up at trial. He disavowed making these statements. He said that he was coerced. There's no evidence of that. I don't think there is any point on which Mr. Cook can be deemed trustworthy. But certainly the detective denied coercing him and it is up to the jury, is it not? The credibility of the witnesses is up to the jury. We're certainly not here to judge credibility again, isn't it? Yes, you're right. And I want to make two points. And the first is I am not saying the detective coerced Mr. Cook. I am saying that Mr. Cook exhibited throughout these proceedings a level of untrustworthiness and that his statements cannot be taken for their truth. And part of that is his statement that he was coerced. If you go through the record, he basically gets caught in this lie at trial. It's lie compounded upon lie, compounded upon lie. I'm not saying that Mr. Cook was coerced. I'm saying he cannot be trusted. And I just want to clarify that point. Let me just delve a little deeper because I believe Justice Zinoff has alluded to this, but hasn't the jury made those credibility determinations? And thank you, Your Honor, because I was going to get to that point. The jury is tasked with resolving credibility issues. That is true and that is the law. But the jury's judgment and the fact finder's judgment still must be reasonable in light of the record. And this court is not precluded from examining the record, and especially where the evidence of culpability comes only from witness testimony. Courts have not hesitated to scrutinize that testimony to ensure that there is a tie between the defendant and the commission of the offense. And courts have recognized that sometimes reasonable actors like a fact finder or a jury can act unreasonably. And so this is not simply a question of, well, could the jury resolve some inconsistencies? I think this, again, goes to, well, are these on collateral matters? These are major inconsistencies describing two wholly different versions of events. The jury's judgment on that was not reasonable in light of what the state presented at trial. And so this court can and should review the witness testimony of Giovanna Tolan and Antron Cook to determine whether those statements can be accepted reasonably for any part of their truth. And here they can. They're contradictory on every single point, and they're contradicted further by the physical and objective evidence. And it merits mentioning that while the state is not required to prove motive as an essential element of a murder conviction, there is a notable lack of a motive here that was ever explained. As I've stated, there is no physical or objective evidence in this case. There's only witness testimony. There's no gunpowder residue. There's no DNA. There's no fingerprints. There's no statement from Mr. Stevens. There's no video or audio footage of Mr. Stevens with a gun. There's no gun. All we have here is two wholly contradictory witnesses that are further undermined by what was collected by the officers who said there were two guns fired here, who found evidence of two incidents that didn't occur as they said. And the lack of motive can be considered by this court in favor of finding a reasonable doubt in this evidence. Well, didn't the police witness indicate that the shots could have come from one gun? I mean, on cross-examination. Well, not on cross-examination. No, this was the state's point. When the state was on direct examination with this detective, he said there were two guns. That's what we concluded from the evidence. And on cross-examination... On redirect. On redirect, yes. I think at best, Detective Kohani equivocated on this matter, but he never outright stated that it was his opinion that this could have happened from one gun. What he said is that if you put a differently calibered bullet in the wrong gun, what's going to happen is it jams. It's going to need to be manually cleared. We have a fired shell casing from a .380 on the scene that was recovered by the police officers very shortly after the shooting occurred. There's no indication there was a jam. There was nothing in either Cook or Toland's statement that this gun needed to be manually cleared. Kohani, again, at best, he equivocated over the possibility. He said, well, theoretically, I suppose this could happen, but that's not what I think happened. Even when he was pressed by the state and by the court, the trial judge actually stepped in and said, I want some clarification here. What are you saying is possible? There was still only equivocation. It was never his opinion that there was only one gun that caused this. And I will also note, there were bullets recovered from Mr. Manning's body during the autopsy. I don't believe those bullets were ever sent in to be tested, but they certainly were not presented in evidence as to whether those were 9mm or .380s. That could have been done, and that could have shed some clarity or shed some light on whether Mr. Manning was struck by two guns, whether there were two different caliber bullets. And certainly by the end of trial, even the trial prosecutor allowed that there could have been another shooter here. The evidence certainly suggested that, and we're not getting the whole truth from either Toland or the state, but because this contradictory evidence cannot be credited, and it is unclear whether Stevens had a role, if at all, in the commission of this offense, this court should find that the state failed to prove Mr. Stevens guilty beyond a reasonable doubt and reverse his convictions outright. I will turn to the second argument now, but I will also entertain any other questions about the first argument if your honors have them. But just to jump in, the trial court's alternate jurors failed to substantially comply with Illinois' rules governing jury selection and constituted plain error. If this court disagrees with our argument over a reasonable doubt, it should still reverse Mr. Stevens' convictions and remand for a new trial where jury selection is conducted appropriately. First, the rules governing jury selection do allow trial judges discretion, but those rules still also require substantial compliance. And those rules, I think, allow for a judge to run his or her courtroom the way that they see fit in certain circumstances. If I could offer an example, rule 434A says that the jury is to be But it's not uncommon for a judge to select a panel or to use a panel of six or to pick all 12 jurors at once, and that could be for a variety of factors, the size of the courtroom, the type of the trial. However, the rules clearly state, both in the Illinois Supreme Court rules and the Code of Criminal Procedure, that alternate jurors are to be passed upon separately after the full jury is picked, and that did not occur here. How? Well, go ahead. I'm sorry, I jumped right in, but we've only got so much time, counsel, so I just wanted to get to it. I mean, the court clearly is using its own language and doesn't want to talk about alternates. It's had problems in the past. It doesn't want to use that term. What did the court do in the selection process that was different or inappropriate with regard to the alternates? Sure, Your Honor, and I think the key here is what you just said, is that the court is using its own language. The trial judge said, I do it differently than other judges. We're going to pick 14, and I'm going to designate the two alternates at the end of trial. I'm with you there, and that's what I struggled with in reviewing this case, but because the court said it was going to do it differently doesn't mean the court did it differently. The court didn't really do it differently, didn't it? Basically, at the end of the trial, say, these are my alternates. You two are my alternates, and they were the last two jurors selected. Isn't that the facts of this case? No, I disagree, Your Honor. The court made it clear that the judge did not want the parties to refer these last two jurors as the alternates. They did pick 14 jurors. It was not clear to the parties before trial started that these jurors would be the alternates, and the judge retained the power up to the end of trial to designate the alternates as the judge saw fit. You do have something recurring throughout the record that the trial judge is making note of. This juror was making notes for this witness. This juror seemed attentive or inattentive, so even though the judge said, well, we'll make these last two jurors the alternates, the judge was still retaining that power to make that designation, and it's not an indication. Excuse me, but not without input from the attorneys. There is certainly dialogue in the transcript where the trial court specifically asked and told the lawyers that if they could agree on others, two others, they wanted as alternates, they were free to do that. Isn't that correct, counsel? That is correct, but I have a few points in response to that, Your Honor. First is that even though the judge allowed that, and I think the timing of that colloquy is important, it was still after the close of all the evidence, and then the only thing left to do was the closing arguments, so that still occurred at a point where the trial was basically over, but for the closing arguments. The second point is... Before you get to your second point, unlike Houston, the case you discussed in your brief, Illinois does not have a requirement, does it, that alternates be specifically designated at the outset? Where is that? I don't see that. I would disagree with that, Your Honor, because the Illinois Supreme Court rules in the Code of Criminal Procedures say you pass upon alternates separately, you pick them after the jury is impaled and sworn, and while I think that the rules allow for substantial compliance, the rules are pretty consistent in saying, well, there is a separation, there is something different between the full jury and the alternates. That is something that is in the rules and is contemplated by the rules, and I think makes this analogous to the main case, the State v. Houston case, where there is something different about how alternates are picked, but if I could return to my second point of Your Honor's question, because, you know, you referenced, well, there was this colloquy, there was discussion, but if you actually go back and look at the records of the first trial, noting, again, this trial ended in mistrial, there wasn't such a colloquy, you know, and this is a recurring practice of this judge. Counsel, I'm going to interrupt you. The first trial is not relevant here. We are not looking at the first trial. We are looking at what's in the record in this trial. Counsel, that's, you know, two points in response to your last statement. Justice Sinop. Two minutes remaining. The second point, and that made me lose my train of thought. I'm sorry, Counsel. Continue. That's okay. That's fine, Your Honor. I see I have two minutes left. If I could conclude my third point in response to Justice Sinop's question, I think what's important here is that the judge, there was no finality in that colloquy. There was nothing that said that, you know, even if there is supposed input from the attorneys, that they these are going to be the alternates. That was always subject to change. And I also think this court should keep in mind that the defense made a point in the opening brief to say, part of the problem with this procedure is you could have a judge put his or her thumb on the scale in, you know, selecting an alternate, but really trying to maybe ferret out someone who might be more favorable to a side the judge wanted. This same procedure is easily by both parties. Yes. Counsel, how did this tip the scales against your client, even if it was error? I think that there are, well, there's two things specifically, Your Honor. And the first is that, and this kind of goes to the plain error argument, that this just undermines the right of trial by jury. You know, the attorneys, they're constantly hearing from the judge, these updates on the jurors, who's paying attention, who's not, you know, this was supposed to be settled before the trial. You really have a risk of divided attention here without a way to establish a record as to how these jurors are, you know, receiving this information. And the second point goes to, because they don't have this finality in picking the jury, I'll just kind of sidelined into the closely balanced argument here. So, again, you're running the risk of putting up a jury after you've heard all the evidence that might be manipulated or might have been placed to find it to, you know, to reach a guilty verdict and excluding the ones who are not, who would be more in favor of acquittal. And that's a real risk here where the evidence is closely balanced. Your Honors, I see I'm out of time. I'll just briefly conclude here and address you in reply. Any remaining questions? Well, I have just one brief one. I'm sorry. Counsel, you seem to be criticizing the judge for advising counsel as to what's happening with the jury. Isn't it the job of a judge to assure that both sides get a fair trial? And the judge not only has to watch what's happening with the lawyers and at counsel table, but certainly what's There's no evidence here that any of this information was imparted to the lawyers in the presence of the jury. Isn't that correct? Well, Your Honor, my response first is that I actually think it's laudable for a trial judge to be concerned about the jury and want to make sure that they're attentive. But that still must be, you know, within the bounds of the law. And part of the problem here is that when you have this irregular procedure and the judge is constantly making those notes, you are running up against the risk of how is this going to be perceived by the judge in its final designation of the alternates or by the parties in advocating for the alternates. And if I could just add, let's say, you know, this procedure is allowed. It's and there becomes an issue on appeal of, well, that juror was improperly designated as an alternate. There's no way that there could ever be a record here because the record's not going to or nodding along and agreed with the police officer who rolled their eyes at the defense witness. And we don't want a situation where you're constantly having sidebars throughout trial. We're not looking at this point just to finish this up so we can have opposing counsel argue. We're not looking at hypotheticals. We are looking at what happened here. Nobody ran out of peremptories in this case. So there was no prejudice with respect to the use of peremptories. So I think we have to confine certainly this court does our review as to what happened here, not a hypothetical, but how did this procedure work out here in this trial? So I appreciate certainly your strenuous arguments and the points that you made. Certainly they're, they're listened to and considered. So please be assured of that. Thank you, Justice Kavanaugh. No, thank you. And not to belabor this, but I did recover the question I was put up by the two minute warning. It was the second part of what I want to follow up on what Justice Zinoff had asked. And I want to hear your response counsel with regard to the way the court conducted this jury selection process in that the court told counsel the procedure. And so ultimately my question is counsel interacted, but isn't it incumbent upon counsel to clarify what the procedure is and to make objections known at that time, prior to the selection of the jury? What do you, what, what says you? Well, my, my two points here are first, we are raising this as a plain error argument, Your Honor, because it's true. The defense attorney, you know, he didn't object to this procedure. And it seemed as if this was a recurring procedure from the judge. He said trial, this is how I do it. I do it differently from other judges, which leads into the second point, which is that this was not, you know, this wasn't, for example, an issue of invited error, where the defendant is acquiescing in the presentation of say hearsay evidence that, you know, arguably wouldn't have been admitted. This is the trial judge come in and said, you know, this is my procedure. This is what we are going to do. And I think that holds a different weight versus how the attorney is going to react against how they're going to react if it's the prosecutor coming in and arguing for the admission of evidence. And I think that is, you know, that could explain why there's not an objection here and why this is a salient issue to be raised under plain error and why it is plain error. Thank you. Thank you, counsel. And thank you for answering our questions. Mr. Goldman, you've been patient. Thank you. You may proceed. Thank you very much, Your Honor. May it please the court, counsel. I'll address the arguments in the order in which Mr. Santella made them, starting with the sufficiency of the evidence. I believe that Justice Sina hit the nail on the head when she distinguished the critical facts from collateral facts. In this particular case, the defense brings up this argument by essentially stating that identity is the central issue. Identity is what this case turned on, but then brings up all of these additional things that don't strictly go towards identity, right? In this particular case, both witnesses were very clear in identifying the defendant as the person who fired the gun. They did this in the photo lineups. They did this at trial. Cook obviously was a little bit different at trial and tried to disavow his prior testimony, but certainly in the police interview was pretty clear about who he believed fired the weapon. And under these circumstances, that is the critical fact. That is the issue of identity. And then there are all these additional collateral matters where the jury could fairly take those things into consideration when deciding the credibility of the witnesses, but those aren't contradictions on the central issue of identity. Now, when addressing the issues of credibility, these kinds of facts are not of the same sort as we saw in the cases cited by the defense in their brief. In this case, it's related to the number of shots fired, the position of people, certain things that may have been observed by Tolan and not Cook, or by Cook and not Tolan. As your honors, I'm sure are aware, it's very common for witnesses to differ as to the number of shots that they hear. Usually in these situations, people are not counting expertly the number of shots fired. Memories are imperfect over time, and certainly perceptions can be different too. When shots are fired in quick succession, a difference between four and six is a completely reasonable discrepancy, and one that the jury could resolve and decide those things are close enough. These people probably were hearing the same thing. In relation to the positioning of people, again, this is a situation that's unfolding rather rapidly. There's a lot of things going on. Certainly once the shots are fired, probably people are pretty frightened. Again, these are situations that the jury can assess, determine the credibility of these witnesses, and come to their conclusion. Importantly, I would ask this court to bear in mind that the jurors have additional things that they can use to assess the credibility of the witnesses that unfortunately just aren't available to us on appeal. They can address the witness's demeanor, whether or not they're shaking or trembling when they deliver their testimony, whether or not they deliver their testimony passionately or dispassionately. These are all things that can contribute or detract from the witness's credibility, and under these circumstances, the kinds of alleged contradictions are not so pervasive, so critical, that this court should essentially take this question away from the jury who was present for all of these additional things and resolve it. Good morning. How do you respond to opposing counsel's argument that testimony regarding the number of bullets, the different caliber of, not bullets, but casings, suggested that there was more than one gun, and that cast doubt on who the shooter was? Yes, Your Honor. So I think that the jury could have come out, could have assessed that fact in multiple different ways. The jury could have, as the defense suggests, decided, well, there were multiple guns, multiple people were shooting, that doesn't match up with the story, we don't believe these people. Or the jury could have decided, as the state argued in closing, that maybe the shell casings rolled out of a car, maybe they were there from a different night. We don't know just because there were shell casings present that this came from this particular incident. And the jury was in the best position to assess that kind of discrepancy and decide whether or not that explanation was something that they accepted, or whether or not they thought that there was a true contradiction that raised a credibility issue for them. Furthermore, they could have looked at the testimony of Detective Kayani and decided that there was one gun fired. As Mr. Santella noted, the detective certainly equivocated on that. But when this court is looking at this evidence and deciding how to evaluate it, the standard is to look at it in the light most favorable to the state. So under those circumstances, even equivocal testimony like that given by Detective Kayani is enough for this court to decide that perhaps there was one gun there on that night, one gun used in this particular incident. And the jury could have fairly decided that even though Detective Kayani was not a firm believer that there was one gun, that that seemed to be a plausible explanation and that, in conjunction with all the other facts that they heard, was sufficient for them to find the defendant guilty. Does that answer your question? Yes, thank you. Thank you, Your Honor. So, Your Honors, I would argue that the points brought up by the defense are essentially discrepancies related to collateral issues that simply raise questions of credibility that the jury was in the best position to resolve and did resolve and decided that the defendant was indeed the shooter. Even things related to differences between the physical evidence and the accounts of the two witnesses are not so contradictory, so outlandish, that this court should completely essentially throw out the testimony of those witnesses and take the question away from the jury. Your Honors, if you have no further questions on that issue, I will turn to the issue of jury selection. I raise numerous reasons why this court can affirm the trial court in relation to this issue in my brief, but I would argue that the simplest reason that this court can affirm is on the basis of waiver and affirmative acquiescence. I would argue that this is clear waiver and certainly this is also a strong candidate for affirmative acquiescence. At one point during the trial, the trial court noted that it would choose jurors 13 and 14 as alternates or designate them as alternates, and defense counsel replied, quote, not a problem judge, unquote. As far as affirmative acquiescence goes, that could not be more clear. The defense agreed that those jurors would be the alternates at that point. That was the time to say I object if they had a problem with it. They didn't do that, and what's more, this wasn't the only time that this issue was brought up. This issue was brought up approximately six times throughout the selection of alternates. At no point did defense counsel raise any kind of issue with this, and again, they didn't raise this issue in a post-trial motion. All of this tends to indicate that defense counsel knew what was going on, understood it, and accepted it, and based upon the way that the jury selection was handled, where it was in fact jurors 13 to 14 who were chosen, perhaps the reason for this was because it ended up being the normal jurors that would have been chosen as alternates anyway. The inference from these facts tends to show that this was a skilled counsel who knew how this jury selection process would go, and while certainly, you know, your honors are correct that we're only addressing this trial, and the first trial doesn't play a material role in this particular case on appeal, we do know that this isn't the first trial obviously in front of this judge, so insofar as we can look at that prior trial to know that this is essentially at least their second time being in front of this judge, they do have some experience. This isn't something that they're doing for the first time. This isn't their first appearance in front of the judge. They made an informed decision. They accepted it, and this court should conclude that certainly waiver occurred here, but if not, waiver affirmative acquiescence occurred, and Illinois courts have held uniformly, including this court, that plain error is a doctrine that's applied to essentially procedural default issues of forfeiture, not issues of waiver or affirmative acquiescence as is the case here, and so if this court concludes that affirmative acquiescence or waiver applies, this court can affirm on that basis alone. Your honors, if there are no further questions, I would simply stand on the strength of my brief as written, ask this court to affirm, and thank you for your time. Thank you, counsel. No questions. Very good. Mr. Santella, you may present your vote. Thank you, your honor. I have a few points, and I will start with the sufficiency of the evidence argument. The opposing counsel has made a point that the contradictory testimony between the witnesses was close enough, and that because it's close enough, it was sufficient for the jury to resolve. He also said that, well, these aren't the kinds of alleged contradictions that are so pervasive as to, you know, be disregarded. I would disagree with that. When looking at other cases, and again, this is an uncommon, this is a rare circumstance where witness testimony has been found to have so many problems as to not be worthy of belief, you have cases like the Illinois Supreme Court's decision in Smith, which there is testimony of how many people left this bar, and that was a very important point of, well, this witness said only one person left the bar. These witnesses said multiple people left the bar. This is the sort of testimony that needs to be analyzed and scrutinized when the evidence of culpability is only from witness testimony, and these are contradictions, and these sort of contradictions that need to be examined because, you know, these witnesses testified consistently as to these facts, and this isn't a situation where, for example, Gervonta Tolan said, well, I was glancing away. There were specific questions, you know, to Antron Cook, did you see a car on the curb, the car that Gervonta Tolan claimed she was in? No. To Gervonta Tolan, did you see a fight between these two witnesses or between David Stevens and describing an event? For witnesses who were consistent throughout, you know, if you look at their testimony between direct and cross, they were consistent. Even Antron Cook was consistent. Although he disavowed his identification of David Stevens in his trial testimony, he still described the shooting the same way. So these are major points. These are contradictions, and they do go to whether this testimony can be believed. None of these points line up with the other witness or with how the physical objective evidence has, you know, portrayed what happened. In this case, close enough is not good enough. It's no good to speculate on the defendant's actions here. The state has the burden to prove if the defendant committed this offense, and here this court should find the state failed to meet that burden and reverse Mr. Turn to the second issue. The state has argued, you know, that there was maybe some sort of affirmative acquiescence here. I think the record undermines that. The only party that really affirmatively acquiesced to this procedure was the prosecutor at the beginning of the second trial. Looking at just this trial, as this court has said, we should look at just this trial. You know, the trial judge did say, well, I use this procedure. I do it differently. But if we're going off this trial, what happened here is that the trial judge, using a regular procedure, said he was going to retain the power to designate the alternates and did so at the end of trial. The state has pointed to the colloquy before, or excuse me, at the end of, I believe the third day of trial, at the end of all the evidence before closing arguments, where the court said, well, it'll probably be 13 and 14. I think what's notable here is that there's no finality in the selection of the alternate jurors at that point. The court still leaves it open of if you guys want another person or suggest somebody else to be the alternate, we can hear it. And that's when defense counsel says, not a problem. I think it's ambiguous as to what defense counsel is saying here as to whether this can be some sort of affirmative acquiescence. What's happening is that the trial judge is leaving open his retained power to designate the alternate jurors in violation of the rules governing jury selection. Well, don't courts do that in every jury trial? Don't we retain the power to select jurors in that? I, on several occasions, lost jurors for one reason or another. I know on one case, two were dismissed. So I had retained the power to, in the end, determine who, which jurors would deliberate on the case. It seems like semantics the way you're arguing it. I don't mean that. That sounds harsh, but. No, I understand your question, Your Honor. And this is part of the issue here is that we're not saying that judges should be denied the freedom to run the courtroom as they see fit, but they still must be within substantial compliance of the rules. In situations like you're describing, I mean, the rules contemplate that a juror could be discharged. A juror could get sick. A juror could die. That's happened. And that's why we have alternates. But in those situations, alternates are picked before the trial begins, and that's known to the parties. There is a discussion at one point where the court has that conversation with the attorneys. Basically, he's lost jurors before, like it happened in the last trial or something of that effect. That's the situation he explained. Yes, Your Honor. Well, again, we're not disputing that alternates serve a purpose here. The point is that the alternate should be known to the parties before the trial begins. And certainly, if a juror was discharged, you would have the alternate ready to slot them in. But the problem is that you're having the judge designate the alternates after everything is heard. But then the court, again, I mentioned this earlier, but the court certainly did tell counsel that if they could agree on other alternates than the ones he was going to indicate, he would be fine with that. So when we're talking about a method or procedure that is substantially compliant, certainly given the fact that he gave the power and authority to counsel to be part of that decision, I don't see how that wouldn't be substantially compliant with 434. Because I think at the point at when that's occurring, you're no longer in jury selection. It's not clear. Is the judge saying these are peremptories or does it need to be a four cause determination? At this point, jury selection has concluded. The judge is saying if you have somebody, we can talk about it. But that, again, is getting to the point of, well, are we running the risk of putting the thumb on the scale? Again, I don't mean to talk in hypotheticals, but the only point here is that the judge is inviting and creating this new procedure where it's not clear if this is going to be a four cause determination or if this is going to be a peremptory. The time for peremptories was before trial during jury selection. And a point that I'll just conclude on, Your Honors, unless you have more questions, is that as I've said, this runs the risk of the judge putting his or her thumb on the scale. The parties could exploit that system as well. Both the defense counsel and the prosecutor could say at the judge's invitation, well, that juror's seven or that juror's six, I don't know about them because they were nodding to the witness that I didn't like. And so I think that is a specific problem. That's why the rules contemplate jury selection is concluded before trial begins. And that's why courts have done it that way. So for those reasons, if this court does not agree with our sufficiency of the evidence argument, this court should still reverse and find plain error occurred and remand Mr. Stevens's case for a new trial. Thank you. Very well. Thank you, counsel. Thank you both. The court will take this matter under advisement and we now stand in recess.